## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONALD STANLEY, JR.,

     Plaintiff,

vs.                                      No. 20-cv-236 JCH-GBW

GEO GROUP, INC., et al

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Tort Complaint (Doc. 1-1) (Complaint). Also before the Court is his Motion to Strike Defendant's notice of removal, which requests a remand to state court (Doc. 5) (Motion). Plaintiff is incarcerated and appears *pro se.* Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915A, the Court will deny the Motion; dismiss the Complaint; and grant leave to amend.

## BACKGROUND[1]

In this case, Plaintiff alleges prison officials failed to protect him from attack. The issues began in March of 2017, when he was incarcerated at the Lea County Correctional Facility (LCCF). *See* Doc. 1-1 at 4. Fellow inmate Chris Hernandez attacked Plaintiff while Plaintiff was "induced on medication" in his bunk. *Id.* at 4-5. Plaintiff almost lost his eye but was quickly transported to an optometrist. *Id.* at 5. Security purportedly failed to discipline Hernandez, who was paroled 30 days later. *Id.* In the following months, at least two other inmates (Kriessel and Landins) verbally abused Plaintiff. *Id.* at 18. Kriessel was Plaintiff's cell-mate, and Plaintiff obtained a housing

---

[1] The background facts are taken from Plaintiff's Complaint (Doc. 1-1), which the Court accepts as true for the limited purpose of this ruling.

reassignment on October 27, 2017.  *Id.* at 11.

About two months later, Kriessel and Landins "jumped and sucker punched" Plaintiff in the Day-Room.  *See* Doc. 1-1 at 4, 11-12.  LCCF security again failed to adequately discipline the perpetrators.  *Id.* at 4.  Plaintiff alleges that LCCF security was aware of the verbal abuse before this attack, but he does not identify any members of the security team.  *Id.* at 18.  At least one grievance was forwarded to Captain Richardson, who stated security could "lock [Plaintiff] up," *i.e.,* place him in protective segregation.  *Id.* at 12.  It appears Plaintiff declined, and on January 8, 2018, his new cellmate (Stinneth) attacked him twice in one night.  *Id.* at 4, 10.  The attacks occurred in Plaintiff's bunk at about 3:00 a.m. and again at 4:30 a.m.  Inmates Guinness and Lopez participated in the attack, while at least three others stood at the top tier of the stairs looking on. *Id.*  Stinneth's mother is a guard at a different GEO Group, Inc. (GEO) prison facility, and Plaintiff alleges Stinneth has many "homies," *i.e.,* associates who would fight if necessary.  *Id.* at 10-11. Like the others, Stinneth was not sufficiently punished.  Plaintiff alleges that LCCF "security encourages gang activity by siding with perpetrators and punishing victims," and that the attacks occurred "with security's awareness and/or carelessness."  *Id.* at 5, 11.  On February 6, 2018, Plaintiff was transferred to the Northeast New Mexico Detention Facility (NNMDF), where he currently resides.  *Id.* at 5.

The Complaint raises claims under the Eighth Amendment, the Equal Protection Clause, and the New Mexico Tort Claims Act, N.M.S.A. 41-1-1, *et. seq.* (TCA).  *See* Doc. 1-1 at 3.  Plaintiff seeks at least $750,000 in damages from Defendants GEO, LCCF Warden Santasaben; LCCF Warden Smith; and the New Mexico Corrections Department (NMDC).  *Id.* at 1, 7.  Plaintiff originally filed the Complaint in New Mexico's Fifth Judicial District Court, and it appears he only

served GEO.  *See* Doc. 1 at 1.  GEO removed the Complaint to this Court on March 16, 2020, within thirty days of receipt of service.  *Id.*  On April 10, 2020, Plaintiff moved to strike the Notice of Removal.  *See* Doc. 5.  Construed liberally, the Motion seeks a remand of this action.  The Court will address the Motion before turning to the Complaint.

## Standards Governing *Sua Sponte* Review

The Court has discretion to dismiss a *pro se* prisoner complaint *sua sponte* under 28 U.S.C. § 1915A at any time if the action "is frivolous or malicious; [or] fails to state a claim on which relief may be granted."  The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted).  The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals" of a cause of action and conclusory allegations, without more, do not suffice.  *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall,* 935 F.2d at 1110.  If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading

requirements." *Id.* At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

## DISCUSSION

### A. Motion for Remand

As an initial matter, Plaintiff asks the Court to remand this matter to state court. He appears to allege this Court lacks subject matter jurisdiction because his Tort Complaint does not assert a federal claim. *See* Doc. 5 at 2. GEO opposes remand, arguing that the Complaint raises federal constitutional claims under 42 U.S.C. § 1983. *See* Doc. 6.

An action filed in state court may be removed to federal district court if the complaint raises a federal question. *See* 28 U.S.C. 1441(a). This includes claims arising under the U.S. Constitution or federal law. *See* 28 U.S.C. § 1331; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). The presence or absence of federal question jurisdiction "is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citations omitted). "The propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

The Complaint here plainly raises a federal question. Plaintiff alleges he complied with the requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997. *See* Doc. 1-1 at 5. The Complaint also raises claims for:

> Violation of USCA Amendment VIII (8) and N.M. State Const. Art. II Sec. XIII (13); cruel and unusual punishment inflicted; USCA Amend. V (5) & (XIV); N.M. State Const. Art II Sec. XVIII (18); Equal Protection; Free from Prejudice. Plaintiff seeks $750,000 maximum allowable pursuant to §§ 41-4-19 N.M.S.A.

*Id.* at 3.  The Court construes this statement to raise claims under the U.S. Constitution for: (1) cruel and unusual punishment under the Eighth and Fourteenth Amendments; and (2) equal protection violations under the Fourteenth Amendment.  Such construction is consistent with Plaintiff's Motion, which continues to reference federal law.  Plaintiff seeks a remand but also states "Defendants have insulted [and] mocked [his] constitutional rights, state & *federal*," and "[P]laintiff has a constitutional right; state & *federal*; to petition the Government."  Doc. 5 at 5 (emphasis added).  Accordingly, the Complaint was properly removed based on federal question jurisdiction, and the Court will deny Plaintiff's Motion seeking a remand (Doc. 5).

>    **B.    Screening the Complaint**

The crux of the Complaint is that Defendants failed to protect Plaintiff from attack in violation of the Eighth Amendment, the Equal Protection Clause, and the TCA.  The Court will address each claim below.

>    **1.  Eighth Amendment Deliberate Indifference**

Eighth Amendment claims stemming from prison attacks are analyzed under 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016).  "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000).  The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution.  *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998).  There must also be a connection between the official conduct and the constitutional violation.  *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

Prison officials can be liable under the Eighth Amendment for "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994). To state a deliberate indifference claim, the plaintiff must show: "(1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (quotations omitted). The objective component is generally met when fellow inmates assault the plaintiff. *Id.*; *Wilson v. Falk*, 877 F.3d 1204, 1210 (10th Cir. 2017) (where fellow inmate stabbed plaintiff, only subjective component was in dispute); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005) (noting a physical assault satisfies the objective component of the Eighth Amendment test). To satisfy the subjective component, the complaint must include "evidence of the prison official's culpable state of mind." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006) (quotations omitted).

While the attacks here are objectively serious, the Complaint fails to allege any Defendant (GEO, NMCD, Warden Santastaben, or Warden Smith) was aware of the risk or involved in the wrongdoing. It is well settled that the "New Mexico Department of Corrections is not a person subject to suit under § 1983." *Blackburn v. Department of Corrections*, 172 F.3d 62 (10th Cir. Feb. 25, 1999). As to the remaining Defendants, private corporations and prison supervisors cannot be held vicariously liable for employee's alleged constitutional violations under § 1983. *See Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003) ("[A] private [entity] 'cannot be held liable solely because it employs a tortfeasor—or, in other words ... cannot be held liable under §

6

1983 on a respondeat superior theory.'"); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisory status does not support § 1983 liability).  A plaintiff must show the corporation or supervisor "had an 'official ... policy of some nature ... that was the direct cause or moving force behind the constitutional violations." *Dubbs*, 336 F.3d at 1216 (applying the rule to entities); *Moya v. Garcia*, 895 F.3d 1229 (10th Cir. 2018) (applying the rule to prison wardens).  Plaintiff has not shown any wrongdoing is traceable to a policy or custom by GEO or the Wardens.  The Complaint therefore fails to state a cognizable claim for deliberate indifference under the Eighth Amendment and/or § 1983.

### 2.  Equal Protection Claim

Plaintiff also alleges the attacks violated his equal protection right.  "The Fourteenth Amendment ensures that states give their citizens 'equal protection of the laws.'"  *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1).  "In other words, states must treat like cases alike but may treat unlike cases accordingly." *Id.* (quotations omitted).  To state an equal protection class-of-one claim, a plaintiff must allege "(1) that other 'similarly situated' individuals were treated differently from [him or] her, and (2) that there is no 'rational basis' for [the different treatment]." *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016).  The Complaint does not describe how Plaintiff was treated differently from others or allege any Defendant acted with discriminatory intent.  Accordingly, the Complaint fails to state an equal protection claim.

### 3.  New Mexico TCA Claim

Plaintiff finally seeks damages under the New Mexico Constitution and the TCA.  The TCA provides the avenue for monetary relief based on state constitutional violations, and its provisions

govern all of Plaintiff's state claims.[2]  *See Cordova v. State, Tax'n & Revenue, Prop. Tax Div.*, 104 P.3d 1104, 1113 (N.M. App. 2004) (observing that plaintiff's "state constitutional claim … is barred by [TCA] Section 41–4–4(A)," as the "Tort Claims Act extends to claims based on violations of the New Mexico Constitution") (citations omitted).

The TCA "provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the Act sets out a specific waiver of that immunity." *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 228 P.3d 504, 510 (N.M. App. 2010).  The failure to protect an inmate from attack is analyzed under N.M.S.A. § 41-4-6.  *See Callaway v. New Mexico Dep't of Corr.,* 875 P.2d 393 (N.M. App. 1994); *Archibeque v. Moya*, 866 P.2d 344, 346 (N.M. 1993).  That section waives immunity for liability "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M. Stat. § 41-4-6(A) (emphasis added).  For a waiver of immunity to occur under § 41-4-6, a defendant's "negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users" on the property in question.  *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261 (N.M. 2006).  The dangerous condition need not be a physical defect.  *Id.*

New Mexico law recognizes two categories of prison attacks, for purposes of § 41-4-6.  The first category was addressed by *Archibeque* and involves a risk of harm to a single inmate.  *See* 866 P.2d 344, 346.  There the plaintiff informed prison officials of a known enemy before joining the

---

[2]  The Court observes that even if Plaintiff could assert a stand-alone damages claim against state officials under the New Mexico Constitution, such claim would fail.  New Mexico has adopted the federal standard for deliberate indifference claims, *see Griffin v. Penn,* 213 P.3d 514, 517 (N.M. App. 2009), and as noted above, the Complaint cannot satisfy that standard.

general population.  *Id.*  The defendant negligently and incorrectly assumed such enemy was no longer at the prison, and the plaintiff was attacked by his enemy shortly thereafter.  *Id.  Archibeque* held that "the 'operation' and 'maintenance' of the penitentiary premises ... does not include the security, custody, and classification of inmates.… Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the" [TCA].  *Id.* at 346-347.  *Archibeque* concluded that because the defendant's actions only put plaintiff at risk, rather than the entire prison population, the plaintiff could not maintain a TCA claim.  *Id.*

 *Callaway* addresses the second category of prison attacks, which are compensable under the TCA.  *See* 875 P.2d 393.  In *Callaway*, the plaintiff was attacked by three known, violent gang members shortly after his arrival, and in a room with multiple blind spots and potential weapons.  *Id.* at 395.  *Callaway* found a waiver of immunity under § 41-4-6 because those circumstances posed a danger to the entire prison population, rather than just one inmate.  *Id.*  Other New Mexico cases emphasize that to state a claim under § 41-4-6, the government must have known or should have known of the alleged dangerous condition that threatened multiple users on the property.  *See Kreutzer v. Aldo Leopold High Sch.,* 409 P.3d 930, 944 (N.M. App. 2018) (rejecting TCA claim where a student was attacked, but there was no evidence the high school parking lot was a "hot zone" for violence or otherwise dangerous to the student population); *Espinoza v. Town of Taos,* 905 P.2d 718, 722 (N.M. 1995) (finding no waiver under § 41-4-6 where child sustained injury on playground, reasoning that the "negligent conduct" did not create "unsafe conditions for the general public"); *Upton*, 141 P.3d at 1264 (noting that the negligent failure to supervise one person during physical activity does establish a TCA violation, but the defendant can be liable for failing to

implement policies to prevent general harm).

In the instant case, Plaintiff has not alleged facts demonstrating the inmate-assailants posed a risk to the general population at LCCF.  As in *Archibeque*, the Complaint reflects the inmate-assailants were associates who targeted a single inmate - Plaintiff - for unknown reasons.  *See* Doc. 1-1 at 4-5, 11 (suggesting Kriessel and Landins, who perpetrated the December 2017, were friends with Stinneth, who attacked Plaintiff in January 2018).  Plaintiff's allegation that "security encourages gang activity by siding with perpetrators" is insufficient to show the inmate-assailants posed a risk to any individual but Plaintiff, or to the prison population as a whole.  Doc. 1-1 at 11. Consequently, Plaintiff has not demonstrated a dangerous condition within the meaning of § 41-4-6, and the Complaint fails to state a cognizable claim under the TCA.

### 4. Dismissal and Leave to Amend

Having determined the allegations fail to state a claim on which relief may be granted, the Court will dismiss the Complaint without prejudice.  The Tenth Circuit counsels that *pro se* plaintiffs should ordinarily be given an opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). Accordingly, the Court will allow Plaintiff to amend his complaint within thirty (30) days of entry of this Order.  The amended complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008).  If Plaintiff declines to timely file an amended complaint or files an amended complaint that also fails to state a cognizable claim, the Court will dismiss the case with prejudice and without further notice.

**IT IS ORDERED** that Plaintiff's Motion to Strike the Notice of Removal (**Doc. 5**) is

**DENIED**;

  **IT IS FURTHER ORDERED** that Plaintiff's Tort Complaint (**Doc. 1-1**) is **DISMISSED**

**without prejudice**; and Plaintiff may file an amended complaint within thirty (30) days of entry

of this Order.

                    _____

                    SENIOR UNITED STATES DISTRICT JUDGE

11